USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

37 BESEN PARKWAY, LLC, on
behalf of itself and all
others similarly situated,

      Plaintiff, : 15 Civ. 9924 (PGG)(HBP)

 -against- : OPINION
           <u>AND ORDER</u>

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.),

      Defendant.

----------------------------------X

    PITMAN, United States Magistrate Judge:

    I write to resolve two issues left open at the discovery conference held in this matter on September 12, 2017.

    The first issue relates to the conditions under which certain mortality experience data that defendant has produced to plaintiff can be made available to plaintiff's expert, James Rouse. The data in issue is the experience data underlying defendant's JH07, JH11 and JH14 experience studies and data for all universal and variable life insurance policies issued since 2000. This data has been produced to plaintiff's counsel on an "eyes-of-counsel-only" basis; plaintiff seeks to share the data with Rouse. Summaries based on the experience data in issue have already been made available to Rouse. Rouse is a co-founder of

Demeter Investments which provides advice and brokerage services to individuals and entities who trade in blocks of life insurance policies in the tertiary market, i.e., the market in which life insurance policies are traded among investors, but not between investors and original owners or insureds. Plaintiff proposes that the data in issue be made available to Rouse under the protective order currently in place which would prohibit the use of the data for "any business, commercial or competitive purposes." Defendant contends that this protection is insufficient because once Rouse has access to the information he will be unable to segregate it in his mind and that he will use it to compete unfairly with defendant. Thus, defendant proposes that the data should be disclosed to Rouse only upon condition that he agree not to participate or advise parties in connection with life insurance policies issued by defendant for a period of five years.

I conclude that the enhanced protections sought by defendant are neither necessary nor appropriate.

First, defendant and Rouse's clients do not operate in the same market. An insured who decides to exchange his/her life insurance policy for immediate cash has two choices; he or she can surrender the policy to the issuing insurer or sell it to an investor. Thus, investors and insurance companies do compete in

what the parties have referred to as the "secondary market," namely the market in which insureds or owners of policies sell or surrender their policies. As noted above, Rouse's firm provides advisory and brokerage services in the tertiary market or the market in which investors buy and sell blocks of policies from and to other investors. Defendant does not claim to participate in this market and, therefore, Rouse's clients do not compete with defendant.

Second, I have reviewed a sample of the data in issue and find that it is so voluminous and detailed that it creates no substantial potential for misuse. Defendant has provided a sample of the data underlying the JH14 mortality study. Defendant's sample is comprised of 10 rows of data; the entire study contains 195,000 rows of data. Each row has 57 columns each of which contains various pieces of data. Thus, in total, the study contains more than 11 million pieces of data. The data in a particular row includes, among other things, the policies written on a particular form, where the policy was issued in 2004, whether the insured was a smoker and the age range of the insured at the time the policy was issued. The row goes on to provide the expected deaths during a particular year and the actual number of deaths. Assuming that Rouse and plaintiff comply with the protective order issued in this matter and return or destroy

3

all copies of the data in issue and all compilations, summaries, etc. that capture or contain the data (and there is no claim that plaintiff or Rouse will violate the protective order), it is inconceivable that Rouse could retain all this data in his memory and recall it in any meaningful way; the experience data is simply too voluminous for Rouse, or any individual, to retain.

Third, defendant's policies do not make up a substantial part of the market in which Rouse is active. Demeter provides advice and brokerage services with respect to blocks of life insurance policies, not individual policies. According to plaintiff,

> In the last four years, the blocks for which Demeter provided advice on the tertiary market ranged from a block of 650 policies with $1.6 billion in face value, of which 48 policies were issued by John Hancock, to a block of 6 policies with $46.5 million in death benefit, of which one policy was issued by John Hancock. Of 1,864 policies on which Demeter has provided advice to clients, 163 policies (8.7% by count) were issued by John Hancock entities, including John Hancock Life Insurance Company, John Hancock Life Insurance Company USA and John Hancock Variable Life Insurance Company.

(Letter from Seth Ard, Esq. to the Undersigned, dated September 19, 2017 (Docket Item ("D.I.") 79) ("Ard Letter") at 2-3). Given the relatively small number of defendant's policies involved in the transactions in which Demeter has participated and the fact that mortality experience data cannot predict when a particular insured will die, the data in issue would not provide any mate-

4

rial advantage with respect to the tertiary market for insurance policies.

Fourth, plaintiff's counsel has advised that Demeter's customer's do not seek Demeter's guidance or advice with respect to the type of information disclosed by the data in issue (Ard Letter at 4-5).

Accordingly, for all the foregoing reasons, I find that enhanced protection for the experience data underlying defendant's JH07, JH11 and JH14 experience studies and data for all universal and variable life insurance policies issued since 2000 is not necessary, and that plaintiff may make them available to Rouse under the terms of the protective order currently in place.

The second issue left open at the September 12 conference is defendant's application to compel production of the retainer agreement between plaintiff and its counsel. Defendant seeks this document to "shed light on who is running this lawsuit, and more broadly, who the real person behind Besen actually is" (Letter from Joseph F. Kroetsch, Esq. to the Undersigned, dated September 11, 2017 (D.I. 74) at 5). Plaintiff claims that its retainer agreement with counsel is irrelevant.

Defendant's argument is unconvincing. To the extent defendant claims that production of the retainer agreement is necessary to determine who is controlling the lawsuit and the

adequacy of Besen as a representative, defendant assumes that the individual who signed the retainer agreement is the person controlling the lawsuit. In theory, the retainer agreement could be signed by any individual with authority to bind Besen; the signatory may or may not be the person directing the lawsuit. Moreover, even if I assume that it is probable that the person who signed the retainer agreement is the person controlling the lawsuit, the only part of the retainer agreement that would be relevant is the identity of the person who signed the retainer agreement on behalf of Besen; defendant had the opportunity to explore this issue when it conducted the 30(b)(6) deposition of Besen.[1]

Because defendant has failed to demonstrate relevance, its application to compel production of the retainer agreement between plaintiff and its counsel is denied.

---

[1] I also note that the overwhelming weight of authority holds that the terms of the retainer agreement are not relevant to certification issues. E.g., In re: Takata Airbag Prod. Liab. Litig., No. 15-2599, 2016 WL 5844309 at *4-*5 (S.D. Fla. May 23, 2016) (Report & Recommendation), adopted at, No. 14-24009-CV, 2016 WL 5844308 (S.D. Fla. July 7, 2016); Fort Worth Employees Retirement Fund v. J.P. Morgan Chase & Co., 09 Civ. 3701 (JPO)(JCF), 2013 WL 1896934 at *2 (S.D.N.Y. May 7, 2013) (Francis, M.J.); In re Front Loading Washing Mach. Class Action Litig., No. Civ. Action No. 08-51 (FSH), 2010 WL 3025141 at *4 (D.N.J. July 29, 2010); Stanich v. Travelers Indemnity Co., 259 F.R.D. 294, 322 (N.D. Ohio 2009); Piazza v. First American Title Ins. Co., No. 3:06CV765AWT, 2007 WL 4287469 at *1 (D. Conn. Dec. 5, 2007) (collecting authorities).

The Clerk of the Court is respectfully requested to close Docket Items 60 and 71.

Dated:  New York, New York
        October 5, 2017

SO ORDERED

*[signature]*
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel