# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 37 BESEN PARKWAY, LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>Defendant. | Civil Action No. 15-cv-9924 |

**DECLARATION OF STEVEN G. SKLAVER IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS**

i

I, Steven G. Sklaver, declare as follows:

1.      I submit this declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards, in connection with the proposed class action settlement between Plaintiff 37 Besen Parkway, LLC, for itself and on behalf of the proposed Settlement Class, and Defendant John Hancock Life Insurance Company (U.S.A.) ("Defendant," or "John Hancock").

2.      I am a partner of the law firm Susman Godfrey L.L.P., which is counsel for Plaintiff, previously appointed Interim Class Counsel, and the Court-appointed lead counsel for the Settlement Class ("Class Counsel").

3.      On May 2, 2016, the Court appointed Susman Godfrey as interim class counsel pursuant to Rule 23(g)(3). Dkt. 26. Susman Godfrey's application (Dkts. 22-24) focused on its experience with class actions and life insurance COI litigation.

4.      Since being appointed interim class counsel, Susman Godfrey has made significant efforts to prepare the case and reach the outstanding Settlement, as detailed below.

5.      The documents attached as exhibits to a prior declaration in support of preliminary approval (Dkt. 133) demonstrate the extensive experience that Susman Godfrey and many of the individual attorneys who are working on this case have in complex civil litigation, including specifically in the litigation of cost of insurance disputes.

6.      As part of its pre-filing investigation, Susman Godfrey studied how many other John Hancock policy forms share the same language or have different terms and collaborated with an expert to reverse engineer the COI rates charged, in order to compare them to recent industry-standard mortality tables. SG also prepared and submitted numerous open records

requests with state insurance regulators that unearthed a description of how John Hancock set its COI rates when these policies were first priced. Susman Godfrey's efforts since being appointed interim class counsel include, but are not limited to, the following:

- Analyzed over 340,000 pages of documents, including over two thousand spreadsheets as well as highly-abstruse actuarial tables and memoranda, and repeatedly pressing John Hancock to remedy deficiencies in its document productions.

- Issued eighteen subpoenas to Defendant's reinsurers and actuarial and financial advisors, yielding thousands of pages of documents containing key information.

- Conducted an extraordinarily labor-intensive process of extracting policy-by-policy data reflecting the historical credits and deductions to the account value of all Class members' policies from John Hancock's computer databases, including by collaborating with experts and consultants to create custom computer scripts to automate the extract of this data out of John Hancock's systems, under a Rule 34 inspection conducted onsite over 23 days at John Hancock's headquarters. This process required expertise in databases and 1980s-era computer programming, VBA macros, Rumba scripts, and SQL queries that connected to and ran on John Hancock's systems to extract the data.

- Took numerous highly-technical fact and 30(b)(6) depositions, many stretching over multiple days, including of John Hancock's Vice President of Actuarial Policy; Assistant Vice President, Corporate Actuarial; Actuary Specialist Pricing; and Head of the Pricing Team.

- Successfully moved to compel John Hancock to produce a 30(b)(6) designee to testify about all 28 product lines in the Class.

- After discovering during deposition that John Hancock maintained a previously-undisclosed "MY experience system," successfully moved to compel the production of hundreds of thousands of records from that system which featured prominently in the class certification motion and reports.

- Defended the depositions of 37 Besen's managers Eliazer and Arnold Klein, as well as managing the production of 37 Besen's documents.

- Defended the depositions of Plaintiff's liability expert, James Rouse, and damages expert, Robert Mills.

2

- Prepared a motion for class certification and supporting expert reports, which included dozens of exhibits, totaled over eleven thousand pages, and calculated damages on a policy-by-policy basis.

- Attended a full-day mediation conducted under the supervision of the Honorable Theodore Katz (Ret.), and negotiated the all-cash Settlement that the Court has already preliminary approved.

- Drafted and filed papers in support of preliminary and final approval.

7. I was among the principal negotiators of the proposed class action Settlement with Defendant. Following extensive negotiations, the parties signed a memorandum of understanding on May 24, 2018, and the final Settlement Agreement was executed on July 8, 2018. It is the opinion of Class Counsel that this settlement with Defendant is fair, adequate, and reasonable. Plaintiff similarly supports this Settlement and Class Counsel's fee and expense reimbursement request and believes both to be fair, adequate, and reasonable.

8. The Settlement Agreement is the result of extended negotiations between the parties with the assistance of an experienced mediator, former Magistrate Judge Theodore Katz of this district.

9. Class Counsel first met with counsel for Defendant to discuss settlement at an in-person meeting on April 28, 2017, but that meeting did not result in any movement towards settlement. After Plaintiff filed its motion for class certification on March 12, 2018, the parties re-opened communications concerning settlement. These negotiations resulted in an in-person mediation sessions with Judge Katz that I personally attended and actively participated in. This mediation took place at Judge Katz's offices at JAMS in New York, New York. The mediation was successful, and resulted in the in-person negotiation of a binding memorandum of understanding setting out the principal terms of the Settlement.

3

10. The terms of the Settlement were negotiated after the parties exchanged numerous offers and counteroffers, as well as exchanging mediation and other briefing and participating in teleconferences, email discussions, and the in-person meeting at meditation. By the time the Settlement was reached at the mediation, Class Counsel were well informed of material facts and the negotiations were hard-fought and non-collusive.

11. Class Counsel took steps to ensure that we had all the necessary information to advocate for a fair settlement that serves the best interests of the settlement class.

12. Class Counsel analyzed over 340,000 pages of documents including over two thousand spreadsheets as well as extensive actuarial tables and issued eighteen subpoenas to Defendant's reinsurers and actuarial and financial advisors. Following extensive negotiations over the production of data about the historical credits and deductions to Class members' policies, Plaintiff's experts spent 23 days onsite at John Hancock's offices in Boston extracting this data from John Hancock's systems. Plaintiff's expert had to, among other things, code custom computer scripts to extract data from John Hancock's computer databases.

13. Class Counsel took multiple depositions of John Hancock's current and former employees and officers, as well as three separate 30(b)(6) designees. Class Counsel successfully moved to compel John Hancock to produce hundreds of thousands of records of data from its key "MY Experience System," Dkt. 83, as well as for John Hancock to produce 30(b)(6) designees on the entire Class at issue, Dkt. 82. Class Counsel defended the depositions of 37 Besen's managers Eliazer Klein and Arnold Klein, as well as Plaintiff's liability expert, James Rouse, and Plaintiff's economic expert, Robert Mills. Class Counsel participated in the deposition of other third-parties, depositions that John Hancock requested and took that were allegedly involved in the acquisition of the policy owned by 37 Besen.

14. The specific terms and conditions of the Settlement are set forth in the Settlement Agreement, which was submitted in connection with Plaintiff's Motion for Preliminary Approval of the Settlement. Dkt. 133-2. The principal terms of the Settlement are that John Hancock will pay $91.25 million in exchange for a release of the claims related to the allegations brought in this case. That $91.25 million is non-reversionary, and will not be reduced by opt-outs. The release in this case does not release claims that members in the Class may have in the future on account of a future increase in COI rate scales by John Hancock nor does it release claims related to any failure by John Hancock to pay any death benefits owed.

15. In my opinion, the $91.25 million cash payment to the Class adequately compensates the members of the proposed Settlement Class for their damages in view of the risks of litigation. Mr. Robert Mills, Plaintiff's damages expert on class certification, had estimated on class certification that through August 2016 and within the applicable statute of limitations, the Class was overcharged $217 million. A cash payment by John Hancock of $91.25 million therefore represents, taking the upper-end of that damages model, at least 42% of those alleged overcharges through that period. This Settlement represents an especially good result for the Class because none of the cash in the Settlement Fund will be returned to Defendant.

16. It is the opinion of Class Counsel that the Settlement with Defendant is fair and reasonable, especially in view of the large size of the payment by John Hancock.

17. Class Counsel recommends the proposed distribution plan described in the Notice and attached as Exhibit D to the Settlement Agreement, which ensures a minimum payment to Class members plus a *pro rata* distribution measured by the damages that each Class member allegedly suffered during the applicable statute of limitations. The proposal is fair, adequate, and

reasonable, especially in light of Counsel's detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery.

18. Susman Godfrey frequently takes high-stakes non-class commercial cases on a contingent fee basis. In cases like this one where the firm is advancing expenses, the firm has a standard contingency agreement, under which it receives 40% of the gross sum recovered by a settlement that is agreed upon, or other resolution that occurs, on or before the 60th day preceding any trial, plus reimbursement of expenses. Sophisticated parties and institutions have agreed to these standard market terms. The firm receives 45% of gross recoveries received after that time. The requested fee here of 30% of the gross recovery is *less* than what Susman Godfrey would receive under its standard contingency agreement entered into in a competitive market.

19. The schedule below is a summary reflecting the amount of time spent by the attorneys and professional support staff of Susman Godfrey who were involved in this litigation, and the lodestar calculation based on Susman Godfrey's 2019 billing rates. The following schedule was prepared from daily time records regularly prepared and maintained by Susman Godfrey, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses are excluded and not reflected below.

| Attorneys | Current Rate | Hours | Value |
|---|---|---|---|
| Ard, Seth (Partner) | $750 | 682.20 | $511,650.00 |
| Kirkpatrick, Ryan C. (Partner) | $750 | 8.40 | $6,300.00 |
| Sklaver, Steven G. (Partner) | $900 | 914.40 | $822,960.00 |
| Bridgman, Glenn (Associate) | $575 | 2,785.60 | $1,601,720.00 |
| Lewis, Frances (Associate) | $425 | 8.00 | $3,400.00 |
| Nath, Rohit (Associate) | $525 | 845.20 | $443,730.00 |
| Spear, Nicholas (Associate) | $525 | 21.20 | $11,130.00 |
| Davis II, Brandon (Staff Attorney) | $300 | 13.90 | $4,170.00 |
| Mohsen, Rania (Staff Attorney) | $325 | 64.30 | $20,897.50 |

| Paralegals, Staff, and Summer Associates | Current Rate | Hours | Value |
|---|---|---|---|
| Bruns, Mandi R. | $175 | 30.30 | $5,302.50 |
| Arreola, Norberto | $275 | 1,790.70 | $492,442.50 |
| Bruton, Rhonda | $275 | 25.20 | $6,930.00 |
| Cobden, Jan | $275 | 8.30 | $2,282.50 |
| DeGeorges, Simon | $275 | 46.50 | $12,787.50 |
| Marron, Sara | $275 | 1.00 | $275.00 |
| Shanks, Rodney J. | $250 | 4.00 | $1,000.00 |
| Tan, Joel | $270 | 7.20 | $1,944.00 |
| Moreno, Graciela | $125 | 1.60 | $200.00 |
| Baheri, Tia | $125 | 10.20 | $1,275.00 |
| Bhalla, Ravi | $125 | 17.50 | $2,187.50 |
| Fowler, Brittany B. | $125 | 13.20 | $1,650.00 |
| Wright, Raymond | $125 | 28.80 | $3,600.00 |
| **Totals** | | **7,327.70** | **$3,957,834** |

20. The total number of hours expended on this litigation by Susman Godfrey's attorneys, paralegals, and staff is 7327.70 hours through January 15, 2019. The total lodestar value of Susman Godfrey's professional services, derived by multiplying each professional's hours by his or her current hourly rates, is $3,957,834. All time spent litigating this matter was reasonably necessary and appropriate to prosecute the action, and the results achieved further confirm that the time spent on the case was proportionate to the amounts at stake.

21. The hourly rates for Susman Godfrey's attorneys and professional support staff are the firm's standard hourly rates. The hourly rates of Class Counsel's attorneys range from $300 to $900 and the hourly rates of paralegals, staff, and summer associates range from $125 to $275.

22. Unlike many firms on the class action side, SG represents plaintiffs and defendants; when entering into result-based fee deals, SG strives for a substantial return on its investment in time and expenses to compensate for risks and opportunity costs, including the

7

opportunity to work on hourly billing work that provides a steady income stream. As is common in the industry, SG's contingency percentages are traditionally based on the gross amount recovered, and provide for the recoupment of any advanced expenses.

23.   As detailed and categorized in the below schedule, SG has advanced a total of $2,240,112.22 in un-reimbursed expenses in connection with the prosecution of this litigation. These expenses were reasonably necessary to the prosecution of this action, and are of the type that Susman Godfrey normally incurs in litigation.

| **Expense Categories** | **Cumulative Expenses** |
| --- | --- |
| Expert/Consultants | $1,970,181.47 |
| Filing/Service/Court Reporter Fees/Transcripts | $15,881.95 |
| Research/Westlaw | $23,215.68 |
| Document Review Hardware/Hosting | $38,964.04 |
| Travel/Meals/Hotels/Transportation | $94,351.48 |
| Mediation | $5,500.00 |
| Photocopies/Reproduction | $16,604.17 |
| Deposition Expenses | $75,112.60 |
| Telephone | $300.83 |
| **Total Expenses** | **$2,240,112.22** |

24.   The current amount of Notice and Administrative costs incurred by Settlement Administrator Epiq Class Action & Claims Solutions Inc. to date is $133,654.29. Class Counsel seeks permission to reimburse the forgoing Notice and Administrative Costs under paragraphs 1.38 and 4.6 of the Settlement Agreement, and such ongoing expenses as may be incurred by the Settlement Administrator.

6321156v1/015039

25. The managers of 37 Besen Parkway LLC have generously contributed their time for the benefit of the Class and, in the opinion of Class Counsel, are deserving of the requested service awards. Plaintiff spent time searching for documents and reviewing pleadings, and spent hours preparing for and attending their depositions (including Mr. Eliazer Klein, who travelled to New York from Montreal for his deposition). Eliazer and Arnold Klein also were involved in handling issues related to depositions of third-parties that John Hancock sought and took related to the acquisition of the policy at issue. Those depositions involved detailed questioning by counsel for John Hancock about the history of the litigation, the allegations in the case, and also activities outside of this case, including the deponents' education, employment, and sensitive personal matters. Plaintiff also evaluated and approved the final settlement reached with the assistance of Judge Katz.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: January 18, 2019              */s/ Steven G. Sklaver*
                                                  Steven G. Sklaver

9
6321156v1/015039

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 37 BESEN PARKWAY, LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>Defendant. | Civil Action No. 15-cv-9924<br><br>**DECLARATION OF SERVICE** |

I, Glenn C. Bridgman, declare:

1. I am over eighteen years of age, I am not a party to this action, and I am an employee with the law firm of Susman Godfrey L.L.P., in the Los Angeles, California office.

2. My business address is 1900 Avenue of the Stars, Suite 1400, Los Angeles, California 90067.

3. On January 18, 2019, I served a copy of the aforementioned document via the court's CM/ECF system upon the following:

Alan Borden Vickery
avickery@bsfllp.com
John Francis La Salle, III
jlasalle@bsfllp.com
Yotam Barkai
ybarkai@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
T: 212 446 2300
F: 212 446 2350

Joseph Fields Kroetsch
jkroetsch@bsfllp.com
Motty Shulman
mshulman@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
T: 914 749 8200
F: 914 749 8300

*Attorneys for Defendant,*
*John Hancock Life Insurance Company (U.S.A.)*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 18, 2019, at Los Angeles, California.

>*/s/ Glenn C. Bridgman*
>Glenn C. Bridgman

1